STEWART AND WARFIELD, vs. DUVALL, et al.—*December*, 1835.

After a decree obtained for the sale of mortgaged property, new parties, alleged to be in possession under the mortgagor, may be added to the decree by a supplemental bill, and may make any objection which might have been urged at the first hearing.

Answers responsive to a bill are to be considered as evidence for the defendants.

Infants who are charged with being the heirs at law of a mortgagor of land are not affected by the answer of their guardian *ad litem*, confessing they are heirs. The answer is not evidence against them, and the facts of heirship, and that they claim as heirs, ought to be proved, before the land in their possession is decreed to be sold.

Where an interlocutory decree for want of an answer, passed as against *one* defendant in Chancery, and a commission issued to take testimony, a mortgage filed under that commission, is not proof against the other defendants, who were not parties to the commission, and consequently, had no notice of its execution.

If the mortgage had been filed in the cause, as proof of the complainants' claim, and to affect and operate against all the defendants, it would have been evidence against all. All would have had notice of the purpose and object of filing it, and if they desired to contest its admissibility, or validity, time, upon application, would have been given.

Where a bill was filed against heirs at law of a mortgagor, and purchasers under a decree for a sale of the mortgaged premises, (for the purpose of disembarrassing the title, and recovering the purchase money) and it appeared the decree could not pass against the heirs, they being minors, for want of other proof than their guardian's answer confessing the facts, nor against the purchasers, because they could not obtain a title to the property purchased by them, this court dismissed the bill without prejudice, that the complainants might institute new proceedings, prove their case more fully, and call upon the purchasers to elect, whether they would rescind their purchase or not.

APPEAL from the Court of Chancery.

The present bill was filed by the appellants, and the *Frederick County Bank* on the 13th of February, 1832.

The opinion delivered by this court, contains the following statement of the case:—

The complainants in this case state, that in August, 1829, they filed their original bill of complaint against a certain *John Etchison*, to obtain a decree to sell certain real and personal property contained in an exhibit, therewith filed, for the purpose of paying the note therein mentioned, and for such other and further relief as might be just and equitable. They state, that *Etchison* appeared and answered the bill, and such further proceedings were had, that a decree was passed for a sale of the property included in said exhibit, for the purposes therein expressed, and that two of the complainants were appointed trustees to make the sale. They refer to said

proceedings, and make them part of their supplemental bill. They state, that a sale of part of the property was made, reported, and confirmed; the residue of the property (though that which has been sold, is not sufficient to satisfy the decree) has not been sold. The complainants further state, that since the filing of their said bill, and the decree aforesaid, a certain *Philip Duvall* and *John G. Duvall*, claim title to a part of the land, conveyed by said exhibit, and a certain *Lyde Griffith* also claims title to another part of said land, alleging that they purchased the same of the said *John Etchison*, and a certain *Ephraim Etchison*, also mentioned as a grantor in said exhibit, who died before the said bill of complaint was filed, and that they purchased before the filing of said bill. The complainants further charge, that since the death of said *Ephraim*, and the filing of their said bill, certain persons alleging themselves to be the heirs at law of said *Ephraim*, have also set up title to part of said lands, and especially to the land called in said exhibit the "*Great Meadows*," claiming a moiety thereof. The bill further charges, that the said alleged heirs of *Ephraim Etchison*, and also the said *Duvalls*, and *Griffith*, are in possession of the land claimed by said heirs, have occupied it for a number of years by themselves, or their tenants, and have received the rents and profits thereof to a considerable amount, and also have with full knowledge of said exhibit, and of the interest of said complainants in the said property therein mentioned, wasted and destroyed the said property, and sold for large sums of money the timber and wood growing on said land. That said *Ephraim* died intestate, and that no letters of administration have been granted on his estate. That the said several persons above mentioned, have refused to deliver up the lands by them respectively held, either to said trustees to be sold, or to those who have purchased a part of them, alleging, that as they were no parties to the suit, in which the decree was had, they are not bound by the same. That by reason of the premises, the complainants can obtain no benefit from said decree, as the purchasers of a part of the land, refuse to

comply with their contract, and the rest of the land cannot be sold.    That the trustees sold a part of the land, to a certain *Rezin Warfield*, a parcel to a certain *Benjamin Todd*, a parcel to *John W. Etchison*, and a parcel to a certain *Archibald Shipley*.    That the said purchasers, object to the payment of the purchase money, because of the alleged defect of the title, which operates to defeat the execution of said decree.    The bill then prays, that the said *Philip Duvall, John G. Duvall*, and *Lyde Griffith*, may each of them severally state, to which part of the land, included in the said exhibit, they claim title, and may shew the evidence of their title respectively, and if they have purchased, may pay the purchase money, or failing to pay it, may be decreed to account for the rents and profits, and all monies received by them for the timber, and other wood sold by them.    That the said heirs of *Ephraim Etchison*, may account for the rents and profits received by them on account of said land, and for any monies which they have received for timber and other wood sold by them, and may shew how they claim any part of said land.    That the purchasers may state, why they refuse to pay the purchase money, and that they may be compelled, either to pay the purchase money, or renounce the sale, and that a second sale may be decreed, and also for general relief.    The above is the substance of the complainants supplemental bill.    To this bill the defendant *Lyde Griffith* answers, and admits, that he is in possession of a parcel of land, which he contracted to purchase from *Ephraim* and *John Etchison*, in the year 1818, and contends, that he claims by title paramount to that of complainants, and as he was no party to the former proceedings, he ought not to be affected thereby, nor ought his title to be put in issue, by any person or persons claiming under said proceedings.    The answer further states, that the quantity of land purchased was not ascertained, and that the price to be paid therefor, was to be fixed by two disinterested persons to be selected for that purpose.    It admits, that the price never had been ascertained, but states, that he paid monies from time to time to the said *Etchisons*, amounting to the sum

of $691,89, for which they gave to him their single bill, which he avers, was given as an evidence of the amount paid by him to said *Ephraim* and *John*, and that the purchase money for said land, when ascertained, was to be credited on said single bill. He then charges, that he has therefore fully paid for said land, and having done so before the complainants title accrued, they are not entitled to relief as against him. That the complainants *Stewart* and *Warfield*, had full notice of his said purchase, and that the purchase money was paid and satisfied. That he is a creditor of the *Etchisons* on said single bill, to the difference between the amount thereof, and the value of said land. He denies, that complainants are creditors of said *Ephraim* and *John*, or that they are entitled to the benefit of the decree mentioned in their bill of complaint. The answer then charges, that their claim originated in fraud, and that all their proceedings originated and were conducted in fraud, with intent to cheat the creditors of the said *Etchisons*, and that he is not bound by said decree, and proceedings, and that the complainants will be bound to prove their case, as if no decree had been passed. The answer of *Philip Duvall* states, that ten or twelve years ago, he purchased a part of the addition to *Ray's Adventure*, from, and paid the said *Etchison* a part of the purchase money, and took possession of the said land, and proceeded under the purchase, and payment, to make very large and valuable improvements upon said land; that some time after the said improvements had been made, it was agreed between him and *Ephraim Etchison*, that the said land should be transferred to a certain *John G. Duvall*, and that said *Etchison* was to pay to him one half of the cost of all the improvements he had made on said land. He further alleges, that the said *John G. Duvall*, was to be accountable to *Etchison* for what might be due, and that the said *Duvall* has possessed said land ever since. The answer of *John W. Etchison* admits, he purchased a part of the land mentioned in complainants' bill, and so far as it has been required of him by the said trustees, he has fully complied with the terms of said sale, and is ready and

willing to make any further compliance with said terms, that may be demanded. That he is ready and willing to pay the whole purchase money so soon as possession shall be delivered. The answer of *Archibald Shipley* admits, that he purchased a part of the lands sold, and complied with the terms of sale by giving bond with security. He alleges, that he has never been put in possession of the land purchased by him, and that he is ready to pay his bond given for the purchase money, whenever he can obtain possession. The answer of *Benjamin Todd* admits, that he became the purchaser of a part of the land sold by said trustees, and gave bond and security agreeably to the terms of sale. He alleges, that he has never been put in possession of the land purchased by him, and that he is ready to pay the purchase money whenever he can obtain possession. The answer of *Reuben Warfield* admits, that he purchased a part of the lands sold by said trustees, and gave bond with security for the payment of the purchase money. That he has never been put in possession of the land so purchased by him, whereby he has suffered considerable damage and injury. He states, that he has always been and now is ready to discharge his bond given for the purchase aforesaid, whenever he is put in possession, and is paid for the damage he has sustained, by reason of the non delivery of the possession. *Philip Duvall* also filed a supplemental answer, the same in substance as his original answer, with the additional admission, that he purchased from *Etchison* nineteen acres of " *Silence Resurveyed,*" and paid a part of the purchase money, which land he admits, he still has in possession. The answers of the infant heirs of *Ephraim Etchison* state, that they have no knowledge of the facts charged in the bill, and submit to such decree as may be consistent with equity. The answers of *Peregrine Etchison,* and *Elijah P. Etchison* admit, that the complainants filed their bill of complaint against *John Etchison,* and that a decree was passed, and other proceedings were had in the cause, to which they refer for greater certainty. They contend, that they are not bound by said proceedings, as they were not

parties, and do not claim under any of those who were parties. They admit, they are in possession of part of the lands in the bill mentioned, and have been in possession ever since the death of said *Ephraim Etchison,* claiming the same as his heirs at law    That the proceedings in the former suit are not evidence against them, and deny that the complainants are creditors of their father.   They charge, that the said proceedings were fraudulent, and the decree obtained by fraud, and therefore could not be used against them.    The above statement comprises the substance of the allegations, contained in the bill and answers in this case.

On the 11th of February 1833, *Bland,* Chancellor, passed his decree, dismissing the complainants' bill with costs, and from that decree, the complainants' *Stewart* and *Warfield,* appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, and ARCHER, Judges.

MAGRUDER for the appellants, contended—

1. It was competent to the complainants to bring new parties before the court, by a supplemental bill, after the decree upon the original bill—and when thus brought in, every defence is open to them, of which they could have availed themselves, if they had originally been made parties. Their situation therefore, is not rendered worse by the first decree.   Of the right of a complainant to bring necessary parties before the court by supplemental bill, there can be no doubt, as even mere formal parties may be so brought in. *Mitf.* 98. 1 *Montg. Ch.* 317, 318. 2 *Chitty Eq. Dig.* 773.

2. The legal title is not in dispute, as the complainants only claim under *E. Etchison,* one of the mortgagors.   They do not assert a paramount title, but one derived, from and under the mortgage, from him.

DUCKETT and ALEXANDER for the appellees.

Stewart and Warfield, *vs.* Duvàll.—1835.

1. Though formal parties may be brought before the court after decree, by a supplemental bill, no case can be found, which authorizes the bringing in, in that way, parties having substantial interests, so as to subject them to the operation of the decree. *Mitf.* 101. 2 *Mad. Ch. Pr.* 519. 1 *Montg. Eq.* 317. *Grant's Ch.* 51. *Boemes Pl.* 307. 2 *Montg. Eq.* 542.

2. The answers to the supplemental bill assert a legal title, adverse to the title of the original defendant, and thus a case was presented, of which a court of Chancery had no jurisdiction. The question presented is a legal one, and proper for a court of law. 4 *Randolph* 496. *Tongue vs. Morton,* 6 *H. and J.* 21.

3. In reference to the infant defendants there is no proof, and they are not bound by the answer of their guardians. The allegations in the bill in relation to them, should have been proved, and without such proof there can be no decree affecting their rights, and with respect to all the other defendants, except *John G. Duvall,* there is no proof of the mortgage; as it was only filed with the commissioner under the *ex parte* commission against him alone.

STEPHEN, Judge delivered the opinion of the court.

The Judge after adverting to the pleadings in the cause, said: It has been objected, that after a decree had passed against *John Etchison,* the defendants could not be made parties to that decree, by a supplemental bill. We are inclined to think that this objection is not sustainable. According to the practice of the English Court of Chancery, after publication has passed, and the cause has been set down for hearing, new parties may be added by amending the bill; but after a decree has been made in the cause, and it is found necessary to make additional parties, it must be done by a supplemental bill. In *Wyatt's Pr. Reg.* 90, it is said, "after publication passed, and the cause set down, you can only amend by adding parties, and cannot introduce new charges, or put a material fact in issue, which was not so in the cause before, but a supple-

mental bill should be preferred. Where a supplemental bill brings a new person, or a new interest before the court, it is open to the parties to make any objection to the decree, which might have been made at the first hearing." In the same book, 89, it is said, " where a supplemental bill, is merely to bring formal parties before the court, the parties to the original, and not be parties to the supplemental bill." So in 4th *Johns. Ch. R.* 606, *Chancellor Kent,* speaking of a supplemental bill, says, " when it is used merely for the purpose of bringing a formal party before the court, as a defendant, the defendants to the original bill need not be made parties. Where the objection for want of parties is made either out of season, as in *Jones vs. Jones,* 3 *Atkins* 110, 217, the want of parties may be supplied by a supplemental bill. In that case, the cause had been once heard, and was brought on again, upon the equity reserved, when the objection was raised. So also in *Holdsworth vs. Holdsworth,* 2 *Dick.* 799, parties appeared to be wanting, on an appeal from a decree at the rolls, and the cause was ordered to stand over, with liberty for the plaintiffs to file a supplemental bill, merely to add parties." In this case, *Chancellor Kent* gave leave to the plaintiff to file a supplemental bill, to bring in a subsequent incumbrancer. In 6th *Johns. C. R.* 450, a bill was filed, to foreclose a mortgage. The defendants in their answer stated, that they derived title to, and owned only two-fifths of the mortgaged premises, by the will of their father, by which legacies were given to other persons, charged upon the whole mortgaged premises. The cause was set down for hearing, upon the bill and answer, and a reference ordered, and upon coming in of the master's report, computing the amount due on the mortgage, and the cause being heard for further directions, the defendants objected, that the legatees ought to have been made parties; and it was agreed, that the objection if good, should be deemed as made in season. Upon these facts, the Chancellor ordered the cause to stand over, to the end, that the legatees might be brought in by a supplemental bill, remarking, that the present defendants need not be made

parties to such bill, according to the case referred to of *Ensworth vs. Lambert*, 4th *Johns. Ch. R.* 605. The legatees in this case, were therefore considered merely as formal parties to the suit, although they had the prior incumbrance, and were ordered to be made parties by a supplemental bill. As the decree obtained at the first hearing, does not bind the newly made parties, but is open to any objection, which might have been made at the first hearing, we do not perceive that either the principles of policy, or justice, forbid the course which has been pursued in this case, in making the defendants parties to the decree. In 2 *Dick*. 799, parties appeared to be wanting on an appeal from a decree at the rolls, and the cause was ordered to stand over, with liberty for the plaintiffs to file a supplemental bill, merely to add parties. In 1 *Dick*. 33, we find the following case. The defendant appealed from a decree, pronounced by the master of the rolls, in the original cause. Before it was brought on, the plaintiff filed a supplemental bill, to carry the decree into execution, apprehending he had not proper parties to the decree when pronounced. The defendant demurred (*inter alia*,) for that the appeal was not determined; the demurrer was over-ruled. In this case, we find a supplemental bill was sustained, to make proper parties to the decree, for the purpose of carrying it into execution, not only after it had been pronounced, but after it had been appealed from. We therefore think, that there is nothing in the objection, that proper parties could not be made to the decree in this case by supplemental bill, more especially, as they are not bound by the former decree, or the evidence in the cause upon which it was founded. In 4 *Harr. and Johns.* 333, this court say, " the rule is, that where new parties are added, after the testimony is taken, the cause shall be heard on bill and answer, as to such new defendants." The bill in this case, calls upon the defendants to state what part of the land embraced by the former decree they are in possession of, and how their title to the same accrued; of course their answers are responsive to the bill, and therefore evidence. We do not think that the complain-

ants are entitled to a decree against *Philip* and *John G. Duvall,* because it does not appear, that the lands to which they claim title are the same, as those mentioned in the deed of mortgage to the complainants. *Philip Duvall* states, that he purchased a part of. the addition to " *Rays Adventure,*" which he transferred to *John G. Duvall,* and nineteen acres of "*Silence Resurveyed,*" which he still has in possession. The lands conveyed by the deed of mortgage, are called in said deed "*Ray's Adventure,*" or the "*Resurvey on Ray's Adventure,*" and " *Silence,*" and there is no proof in the record to shew, that they are the same lands. The answer of *Griffith,* which is also responsive to the bill, and therefore evidence in the cause shows, that he claims by title paramount the mortgage of the complainants, and although his title has not yet been perfected, we do not think that the complainants are entitled to a decree against him. The purchasers under the former decree state, that they are ready and willing to comply with the terms of their purchases, so soon as they can obtain a title to the property purchased by them; against them, therefore, as they are not in default, we think the complainants are not entitled to any relief. The answers of the defendants, who are minors, and who are charged in the bill to be the heirs at law of *Ephraim Etchison,* being by their guardian, and consequently no evidence against them, it was incumbent upon the complainants, before they could obtain a decree against them, as such heirs, or legal representatives, to have proved by legal and competent testimony, that they were the heirs at law of said *Ephraim Etchison,* claiming title to the land in their possession in such character and capacity. The answers of *Peregrine Etchison* and *Elijah P. Etchison* admit, that they are in possession of part of the land in the will mentioned, and have been in possession of the same ever since the death of said *Ephraim Etchison,* claiming the same as his heirs at law. Against them therefore, we think the complainants would be entitled to a decree, for the sale of such part of the land in said mortgage mentioned, as they may have in their possession, as the heirs at law and legal

representatives of said *Ephraim Etchison.* But we think that the deed of mortgage, under which they claim to have the land sold, is not legally admissible in evidence against such defendants, because, it was only brought into the cause by depositing it as proof of the complainant's claim, with the commissioner, to whom the commission issued upon the failure of *John G. Duvall,* to appear and answer, and to which commission the said defendants, were not parties, and consequently had no opportunity of impeaching or disproving the said deed, if it had been in their power so to do ; they consequently, had not notice that the complainants intended to offer such deed in evidence as against them, and consequently for the want of such notice, might have been taken by surprise, if it had been adduced in evidence against them. If it had been filed in the cause, as proof of the complainants' claim, and to affect and operate against all the defendants, it would have been evidence against all, because all would thereby have had notice of the purpose and object to be accomplished by the filing of it ; and if they wished or desired to contest its admissibility, upon the ground of fraud, or had it in their power to contest its legal validity upon any other ground, time, no doubt upon application, would have been given them for that purpose. The filing of it with the register, we think a sufficient notice, that it is to be used on the trial of the cause ; but that as before observed, if the party against whom it is to be read in evidence, should satisfy the chancellor that he would be taken by surprise, time ought to be given him to contest its admissibility, if required. In *1st Paige Rep.* 491, *Chancellor Walworth* states the rule in that state to be, "that if the complainants wish to prove any fact in the bill, not admitted in the answer, they should file a replication, and give the defendant an opportunity to be heard on the question of the existence of the fact. If it is a mere exemplification of a record, which proves itself, it may be sufficient to give notice to the defendant, that it is to be used on the hearing, which will enable him to examine witnesses to explain or rebut the effect thereof, if it can be explained." For the

reasons we have stated, we think the decree of the chancellor ought to be affirmed, so far as it relates to the respondents *Griffith and Philip*, and *John G. Duvall*, and that it ought to be reversed, and the bill dismissed without prejudice, as to the other defendants. We have come to the conclusion, that the bill ought to be dismissed without prejudice, to give to the complainants an opportunity of having the sale rescinded which has been made to a part of the defendants, if upon a bill filed against them they shall so elect, instead of having the sale made to them partially executed, and also to afford to the complainants an opportunity of instituting any new proceeding they may deem necessary, in order to bring the merits of their case fully before the court.

DECREE AFFIRMED *as to Lyde Griffith and Philip, and John G. Duvall, and* REVERSED, *and dismissed without prejudice, as to the other defendants, with costs*